ELY, Appellant, v. MONTANA STATE FEDERATION OF LABOR, Respondent.

No. 8498

Submitted May 16, 1945. Decided July 9, 1945.

160 Pac. (2d) 752 .

Mr. E. G. Toomey and Messrs, Toomey, McFarland & Hall, all of Helena, for appellant.

Messrs. Rankin and Acher, of Helena, for respondent.

HONORABLE DEAN KING, District Judge (sitting in place of Mr. Justice Adair, disqualified), delivered the opinion of the court.

The plaintiff, Stephen Ely, was president of the defendant Montana Federation of Labor for some eight years until the summer of 1928 when the constitution was changed to consolidate the duties of president and secretary in the office of executive president. Ely continued as executive president until December 31, 1929, having been re-elected for his last two year term commencing January 1, 1928. From time to time, until April 1, 1929, he was also employed by the United Mine Workers of America, with the understanding, to which he conformed, that during such times as he was employed by the mine workers he would draw no salary as an officer of the defendant Montana Federation of Labor. He was so employed by the United Mine Workers of America during nearly all of the period from February 15, 1928, until April 1, 1929. In this action he has brought suit against the defendant for wages at $250 per month, from May 1 to December 31, 1929, and for expenses incurred during that period in the sum of $530.32, less $1,000, which he acknowledges has been paid him.

Defendant contends that plaintiff did no work and did not act as executive president during the period from May 1 to December 31, 1929, except for the period between June 20 and July 6; that in May, 1929, he told James D. Graham, vice president of the defendant, to go ahead, do the work of executive president, and draw the $250 salary; that Graham did do the work and draw the salary, and that plaintiff thereby waived his claim to salary for that period. Defendant claims also that after January 1, 1930, Ely accepted $150 in full settlement of the claim. If defendant's first contention is sustained, plaintiff is not entitled to recover, and defendant's second contention need not be censidered.

The District Court made findings of fact and conclusions of law, and entered judgment for defendant, and plaintiff appeals.

The findings of the Court necessary for us to consider with reference to defendant's first contention are as follows:

"That the constitution and by-laws of the defendant, adopted June 26-28, 1928 (Plaintiff's Exhibit No. 4) and in force from August 1st, 1928 to August 1st, 1930 (Plaintiff's Exhibit No. 2) established the office of Executive-President, which seemed to include the duties of President, Secretary and Treasurer, and apparently the whole office force; that among other things it provided: 'He shall be required to devote his time to the welfare of the Federation.' It enumerated his specific duties in great detail, provided a salary, and but one salary, of $250.00 per month and certain expenses. Paragraph 8 also provided: 'In case of a vacancy in the office of Executive-President by death, resignation or other cause, the Vice President shall fill out the unexpired term of the President.' "

"That when the plaintiff entered the employ of the United Mine Workers of America, on February 15th, 1928, James D. Graham commenced performing the duties of Executive-President of the defendant and receiving the salary of $250.00 per month provided for such office by the constitution of the defendant, and continued to do so until December 31st, 1929, with the knowledge and consent of, and at the direction of, the plaintiff; and during all of such time was paid such salary and items of expense incurred by Graham, by the checks offered in evidence in this case, Defendant's Exhibits numbered 23 to 38 inclusive, all of which were drawn and prepared by Graham, and signed by Stephen Ely as President of the defendant. This with full knowledge on the part of the plaintiff that the constitution and by-laws of the defendant provided for only one office of Executive-President, and provided for the payment of only one salary of $250.00 per month for all of the duties to be performed by the Executive-President."

"That prior to April 1st, 1929, the plaintiff learned that his employment with the United Mine Workers would terminate

on April 1st, 1929, whereupon he, the plaintiff, advised said Graham that the plaintiff proposed to take a trip to Europe, and directed that Graham should continue to perform the duties of Executive-President and draw the salary, as he had been doing.''

''That the plaintiff later changed his mind and did not go abroad, and in May, 1929, he saw Graham and told the latter to continue to perform the duties of Executive-President and draw the salary as he had theretofore been doing; but the plaintiff then stated that he desired to retain the title of President of the defendant for the political prestige * * *.''

''That the plaintiff attended the state convention held by the defendant in June, 1929, and performed the duties as President at such convention. Thereafter the plaintiff went to Great Falls on or about July 5th, 1929, and returned to Helena on July 6th, 1929. This on business for the defendant. Except and other than such period from June 20th, 1929, to July 6th, 1929, the plaintiff did not act nor did he perform any duties, in his capacity as President of the defendant.''

''That while the constitution and by-laws required the Executive-President to devote his time to the welfare of the defendant, except as stated in the preceding finding, the plaintiff did not devote his time to the welfare of the defendant during the period from May 1st to December 31st, 1929.''

''That the moneys drawn by the plaintiff from the defendant, during the years 1928 and 1929, exceed any amount which accrued to him for salary or services performed for the defendant and traveling expenses incurred while performing services for the defendant during such period.''

As conclusion of law, the Court found that plaintiff had waived any claim for salary during the period in controversy and that he was not entitled to recover in the action.

With the exceptions noted below, the findings are supported by the direct and positive testimony of the witness James D. Graham, and in many important respects are contradicted by that of the plaintiff.

There is no evidence to show that Graham was paid his salary in full before the end of the year 1929. On the contrary, Graham's own testimony shows that at the close of 1929 there was still a considerable amount of salary owing him, and that that amount might have been in the neighborhood of $800. This discrepancy does not affect the remaining findings which still stand and are supported by substantial evidence, except perhaps as to some immaterial dates.

While in general the findings should be of ultimate facts rather than of the evidentiary facts on which the ultimate facts are based, they seem entirely sufficient, together with the further findings, not inconsistent therewith, which must, if necessary, be presumed.

It is unnecessary to consider plaintiff's contention that the answer is not sufficient to support the defense that the plaintiff waived his right to collect the salary; for, since the evidence went in without objection, the answer will, if necessary, be deemed amended to conform to the proof.

Plaintiff contends that the lower Court should be reversed on the evidence. The function of this Court, in reviewing the evidence, is limited to a determination whether or not there is substantial evidence to support the findings. Brown Bros. Lumber Co. v. Mitchell, 95 Mont. 408, 410, 26 Pac. (2d) 969, and cases cited.

It is true that where the testimony *supporting* a verdict is highly improbable or incredible, or is inherently impossible, in view of the physical facts, then the verdict or judgment based thereon cannot stand, as stated in McGonigle v. Prudential Insurance Co., 100 Mont. 203, 214, 46 Pac. (2d) 687, cited by plaintiff. But it is also true, as stated in that case, that under our statutes the credibility of witnesses and weight to be given their testimony are questions for determination of the jury. The same rule applies to the findings of the Court in a law case, where a jury is waived. Ingalls v. Austin, 8 Mont. 333, 20 Pac. 637; Healy v. First Nat. Bank, 108 Mont. 180, 185, 89 Pac. (2d) 555.

Plaintiff's counsel contend that "the misinterpretation or misconstruction of evidence by the trial court amounted to a deliberate rejection of the uncontradicted credible evidence of record, * * * dealing with the legal status of the office of President and Ely's exercise of the duties thereof." Counsel give us no further information as to what uncontradicted evidence is contended to have been rejected or misinterpreted by the Court, and we find nothing to sustain the contention. It may be that this has reference to their contention with regard to the taking over of the duties and compensation of the office of president by Graham.

It is unnecessary to consider whether, as contended by plaintiff and disputed by defendant, an officer of a corporation or labor union is entitled to the compensation provided for that office until he is legally discharged, resigns or otherwise ceases to retain title to the office, whether he performs the duties of that office, or not. The Court found, on substantial evidence, that plaintiff, the executive president of the corporation, told the vice president to go ahead, do the work of the office, and draw the salary—the only salary provided for any officer of the Federation; that the vice president did the work and drew the pay.

Plaintiff complains that such "an agreement would be in violation of the very constitution under which Vice-President Graham claimed his office." We might add that the plaintiff also held his office under that same constitution and is now attempting to collect the one salary provided by that constitution after having, according to findings supported by substantial evidence, already authorized its collection by Graham in return for Graham's doing the work to earn it. Authorities on the question whether or not an officer of a labor union has the right to draw his salary when he fails to perform the duties of the office have no application. He certainly waives that right when he authorizes someone else to do the work and collect the salary.

Counsel further contend that "The internal contradictions in

the testimony of Graham must move any fair-minded court to characterize his testimony as incredible.'' There are some contradictions in Graham's testimony but no more than in that of plaintiff, nor than might be expected of transactions fifteen years before. We do not find Graham's testimony highly or at all improbable, or incredible, or inherently impossible. The trial court believed it, and we see no reason for rejecting it. It certainly constitutes substantial evidence in support of the findings. We are unable to be more specific as to particular evidence because counsel have not been specific.

Plaintiff also contends that defendant's conduct in avoiding trial of the case for more than ten years ''weighs powerfully'' against the defendant. The only contribution to the delay that we can find on defendant's part was the filing of disqualifying affidavits against two judges, a right expressly conferred by statute. Even if we were to conclude that its exercising of that right constituted evidence against it on the merits, our duty would still be to sustain the findings, since they are supported by substantial evidence.

Plaintiff specifies as error the admission of evidence by labor officials in various towns on behalf of defendant to the effect that plaintiff did not visit their unions during the period in question. Graham testified that plaintiff visited the office of defendant only occasionally during that period and did no work there. Negative testimony to show positively that he did no work outside the office would be impractical. However, even though the constitution did not require the president to visit unions, the testimony to the effect that he did not visit a particular union certainly was competent although not of itself entitled to much weight.

Plaintiff also specifies as error the admission of testimony by various local labor officials that Graham was recognized as the president of the defendant during that period. Plaintiff's contention is that he authorized and directed Graham, during that period, to visit various local labor organizations, and that it was natural for some of them, on that account, to

assume that Graham was president. This contention is based on plaintiff's testimony to that effect, and Graham, in effect, contradicted it by his testimony that plaintiff, with the exception noted above, did not act as president during the period. Plaintiff's brief, in support of this specification of error, quotes from 31 C. J. S., Evidence, sec. 180, p. 881, as follows: "The mere existence of a custom is not necessarily relevant, where no connection thereof with the transaction in question is shown; and, in a given case, the evidence of habit may be so remote, or have such tendency to produce confosion in its collateral bearing on the issue to which it relates, as to call for its exclusion, *in the discretion of the court.*"

We certainly cannot reverse the trial court for this ruling. Even though the testimony were incompetent, the presumption would be that the District Court disregarded it. Healy v. First Nat. Bank, supra.

Plaintiff further specifies as error that the trial court admitted over objection testimony to the effect that the 1927 convention of defendant decided that there should be only one man on the pay-roll. The ground of the objection was that it was not the best evidence, since a record was kept of the convention proceedings. If error, it was certainly not prejudicial, for plaintiff never at any time contended that two salaries could be paid from the funds of defendant. His defense was that he did not authorize Graham to draw the salary; that Graham took care of the Federation office, kept the books, handled the correspondence that came to the office, visited labor unions, and participated in settlement of labor disputes, all under his general supervision, because Graham expected to be the next president and wanted the experience.

In consequence of the foregoing, there is no reason for reviewing the portion of the case dealing with compromise and settlement.

We find no reason for reversing the District Court, and the judgment is affirmed.

Mr. Chief Justice Johnson, and Associate Justices Morris, Cheadle, and Angstman concur.