THOMAS J. SMALL, Plaintiff and Appellant, v. COCA-COLA BOTTLING COMPANY OF MISSOULA, a Corporation, Defendant and Respondent.

No. 9743.

Submitted April 8, 1958. Decided May 20, 1958.
Rehearing Denied August 13, 1958.
328 Pac. (2d) 124.

Fred C. Root, Shallenberger & Paddock, Missoula, Fred C. Root, Missoula, argued orally, for appellant.

Smith, Boone & Rimel, Mulroney & Mulroney, Missoula, E. C. Mulroney and Russell E. Smith, argued orally, for respondent.

THE HONORABLE ERNEST E. FENTON, District Judge, sitting in place of MR. JUSTICE BOTTOMLY:

Appeal from a judgment of the district court in Missoula County dismissing with prejudice the action brought by appellant upon a contract for the sale to the respondent corporation of thirty-five shares of its capital stock. The total sale price specified by the contract was $52,500, on which a down payment of $15,000 and two annual installments of $2,500 each, plus interest, were paid. The contract was entered into on March 27, 1947, and on April 1, 1949, it was modified by reducing the annual installments from $2,500 to $1,710. The installments due on April 1 in each of the years from 1950 to and including 1954 were not paid. On August 18, 1954, appellant filed his complaint praying judgment for the unpaid principal amount of the five delinquent payments aggregating $8,550, together with interest on the unpaid balance of the purchase price. The complaint further prayed for a judicial determination of the right of the seller to receive future payments. The contract provided:

"Time is of the essence of this agreement.

"If the party of the first part shall fail to make said payments of principal and interest promptly when due, or within one year thereafter, it shall lose all right, title and interest of, in and to said thirty-five (35) shares of stock and any payments made up to that time shall be retained by the party of the second part as liquidated damages for the breach of this contract."

It was adjudged by the district court that the plaintiff and appellant is now the owner and holder of the above-mentioned 35 shares; that the defendant and respondent has no right, title or interest therein; "and that the contract of March 27, 1947 * * * is of no further force and effect." This judgment was based upon a finding that the plaintiff and appellant "elected to retain all sums theretofore paid to him by the defendant as liquidated damages for the breach of the contract heretofore mentioned, and elected to hold, own and keep the said thirty-five (35) shares of stock."

The respondent is a closed corporation, all outstanding shares of its capital stock being held by members of the same family..

Ray G. Small, a brother of the plaintiff and appellant, is the president and manager of the respondent corporation. Appellant acquired his 35 shares through a bequest from his father whose will provided that before a sale of the stock could be made it must first be offered to a member of the family. This bequest was subject to a life estate in appellant's step-mother, Bridget Small. At the time the contract was entered into the 35 shares were included in a stock certificate in the possession of Bridget Small, which remained in her possession until her death on June 7, 1953, when Ray Small took possession of the same as the executor of her estate. On February 3, 1955, after the completion of proceedings terminating the above-mentioned life estate, a new certificate evidencing ownership of the 35 shares was issued and delivered to appellant.

Upon the trial appellant testified on direct examination that he had never elected to employ or assert the above-quoted forfeiture provision of the contract. However, respondent contends that this statement was refuted by appellant's testimony on cross-examination indicating that he had claimed ownership of the stock in question since April 1, 1950, subject only to the life estate of his stepmother. Respondent relies in particular upon a letter dated August 14, 1951, directed to Ray Small and signed by the appellant, in part as follows:

"I have received from Mother, Gladys and Irene power of attorney relative to the stock held in the Coca Cola Co. of Missoula. According to Dad's will *you are hereby offered an opportunity to purchase this stock* consisting of 86 shares for the sum of $1500.00 per share." Emphasis supplied.

Appellant conceded that his 35 shares were included in the 86 shares mentioned in the foregoing offer. Additional correspondence and oral testimony is pointed to by respondent in support of its contention that the contract of March 27, 1947, was terminated. To the contrary of that contention, appellant argues that, properly construed, the above-mentioned evidence does not indicate that the contract was terminated, and appel-

lant further directs attention to other portions of the record which tend to support his position.

This case is an example of the wisdom of our rule that the trial court, having the witnesses before it, is in a better position to arrive at the truth than is the appellate court. Where there is a conflict in the evidence in an action tried without a jury, the court's conclusion will not be disturbed on appeal if there is substantial evidence to support it. Healy v. First Nat. Bank, 108 Mont. 180, 89 Pac. (2d) 555. See also Ely v. Montana State Federation of Labor, 117 Mont. 609, 160 Pac. (2d) 752.

Illustrating that there was substantial evidence in support of the findings and conclusions of the lower court, reference is again made to the above-quoted letter written more than a year after respondent's first default in payment. That letter appears to contain an unequivocal offer to sell the stock in question, not to the purchaser named in the contract between appellant and respondent, but to a third person, viz., Ray Small individually, who, as a member of the family, had a preferential right of purchase under his father's will. Thereby the appellant evinced an intent to be no longer bound by his contract with Coca-Cola Bottling Company, and thereby he treated his contract with the corporation as having been terminated.

When inquiry was made on cross-examination of Ray G. Small as to the interpretation he placed on the above-mentioned letter of August 14, 1951, he answered: "It was my understanding from this offer that the contract had been terminated and that the company had forfeited the money that was paid, and that they were holding the stock."

At various times during the five-year period preceding the commencement of this action offers were made for the purchase of the stock on terms entirely different from those set forth in the contract now sought to be enforced by appellant. A communication from the appellant to Ray Small dated July 22, 1953, expresses his dissatisfaction: "You have certainly been inconsistent with your offers, first down, then up, then down,

then up, and now down.'' By the last-mentioned letter, appellant again offered to sell his stock, with the requirement that respondent purchase other and additional shares which were in dispute between the parties, payment to be made over a period of twenty-two years. Without attempting to review all of the evidence, it may be said by way of summary that the acts and conduct of the parties themselves negative the continued existence of the contract. The facts and circumstances shown by the record afford a basis of substantial evidence which warrant the findings and conclusions of the lower court that the contract was terminated.

Appellant urges a reversal of the judgment upon the ground ██ that neither in the above-quoted letter of August 14, 1951, nor elsewhere, was there any legal or sufficient notice of rescission or declaration of a forfeiture, and that there was therefore no termination of the contract. However, the finding that the contract was terminated is not, under the facts and circumstances in this case, exclusively dependent upon the sufficiency and effect of a written notice by appellant.

It is stated in 12 Am. Jur., Contracts, section 446, pages 1027, 1028, that, ''The failure of a party to perform his part of a contract does not per se rescind it; the other party must manifest his intention to rescind within a reasonable time. A formal or written notice is not necessary, but the law requires, on the part of him who would rescind, some positive act which shows such an intention. Rescission of a contract may be a matter of acts as well as of words.''

The case of Petitt v. F. V. H. Collins Co., 112 Mont. 12, 113 Pac. (2d) 340, 342, relied upon by appellant, is not controlling. In that case, unlike the case at bar, ''the conduct of all the parties * * * was such as to recognize the contract as still in existence and to negative the idea that either party treated the letters as notice of cancellation.''

In Restatement, Contracts, section 406b, page 766, it is said: ''Mutual assent to abandon a contract, like mutual assent to form one, may be manifested in other ways than by words. There-

fore, if either party even wrongfully expresses a wish or intention to abandon performance of the contract, and the other party fails to object, there may be sometimes circumstances justifying the inference that he assents. If so there is rescission by mutual assent; but mere failure to object to repudiation is not a manifestation of assent to a rescission. Sometimes even circumstances of a negative character, such as the failure by both parties to take any steps looking towards the enforcement or performance of a contract, may amount to a manifestation of mutual assent to rescind it.''

This rule is also recognized in Eggers v. General Refrigeration Co., 123 Mont. 205, 219, 210 Pac. (2d) 636, 644, where is it stated that ''The parties to the executory written agreement were privileged to terminate it at any time by mutual consent independently of any express agreement so providing and it is immaterial whether such termination be characterized an abandonment, cancellation, mutual rescission or waiver. The effect is the same—to relieve the parties from going forward under the written instrument, and this may be accomplished by parol, and the facts of its having been done established by evidence of the acts and declarations of the parties. Ogg v. Herman, 71 Mont. 10, 20, 227 Pac. 476; Kester v. Nelson, 92 Mont. 69, 10 Pac. (2d) 379, 380.   *   *   *

''The foregoing acts and conduct of the parties constitute a waiver and abandonment of the written agreement   *   *   *''

In Kester v. Nelson, supra, 92 Mont. at page 74, 10 Pac. (2d) at page 380, it is said:

''There can be no question but what a contract may be mutually abandoned or modified by the parties at any stage of performance, and each of the parties released from further obligation on account thereof; that it may be accomplished by parol, and the fact of its having been done established by evidence of the acts and declarations of the parties.''

No errors of law appearing and there being substantial evidence in support of the findings and conclusions of the lower court, the judgment is affirmed.

MR. CHIEF JUSTICE HARRISON, and MR. JUSTICES CASTLES, ANGSTMAN and ADAIR, concur.