MARGARET PICKETT, as Administratrix of the Estate of PAUL E. PICKETT, Deceased, Plaintiff and Appellant, v. *CLAYTON KYGER* and Montana-Dakota Utilities Co., a Corporation, Defendants and Respondents.

No. 11379.
Submitted February 2, 1968. Decided March 28, 1968.
Rehearing Denied April 15, 1968.
439 P.2d 57.

88

Joseph P. Hennessey (argued), Billings, for appellant.

Crowley, Kilbourne, Haughey, Hanson & Gallagher, Billings, Cale J. Crowley (argued), Billings, for respondents.

MR. JUSTICE HASWELL, delivered the Opinion of the Court.

This is an appeal by plaintiff in a personal injury suit from a judgment entered against her upon a directed verdict in the district court of Yellowstone County. The case is a survivorship action by the administratrix of a decedent's estate against a natural gas utility company based upon the latter's alleged negligence in causing a gas explosion resulting in personal injuries to decedent.

The suit as tried in the district court consisted of two claims consolidated for trial, one being this survivorship claim and the other being a wrongful death claim. There were two de-

fendants in the case, the natural gas utility company and the landlord of the residence rented by decedent where the gas explosion occurred. Inasmuch as the wrongful death claim was dismissed by the plaintiff at the conclusion of all the evidence and a covenant not to sue was secured by the landlord from plaintiff following trial, this appeal involves only the plaintiff's survivorship claim against the utility company.

Plaintiff is Margaret Pickett, the surviving widow of decedent Paul E. Pickett and the administratrix of his estate. She will hereafter be referred to as plaintiff or as Mrs. Pickett; Paul E. Pickett will be referred to either by his surname or as decedent. Defendant is Montana-Dakota Utilities Company, a public utility engaged in supplying natural gas for residential cooking and heating purposes to its retail customers in Billings, who will hereafter be called MDU. This suit was filed by Pickett prior to his death, and upon his death survived in favor of the administratrix of his estate under the Montana Survivorship statute, section 93-2824, R.C.M.1947.

The general facts of the situation giving rise to the instant suit will be set forth in the light most favorable to plaintiff for the purpose of our review. On September 5, 1962, Pickett and his family rented a small, one family residence in Billings, and became customers of MDU. This house contained four appliances fueled by natural gas: a hot water heater and a small space heater both located in the bathroom, a heater in the living room, and a kitchen stove. The kitchen stove in addition to four burners for cooking, had a separate compartment on the side containing a broiler section below and an oven above. This broiler-oven was operated by a single knob located on the front of the stove. Shortly after moving into the house, Mrs. Pickett attempted to light the broiler and an explosion occurred, knocking her to the floor in the middle of the kitchen, singeing her hair and eyebrows and burning her forehead. She never again attempted to light the broiler-oven. During their entire tenancy, the Picketts noticed a per-

sistent gassy odor in the house which caused irritation to the eyes of themselves and their guests; on occasion this odor nauseated the Picketts, causing Mrs. Pickett to vomit on three or four different occasions.

On three separate occasions prior to the explosion that forms the basis of the instant case, the Picketts called MDU, complained of the gassy odor, and asked that a repairman be sent out to correct this. In November, 1962, a repairman from MDU came to the house in response to the first call from the Picketts. At this time Mrs. Pickett showed the repairman that there was a leak in the gas fitting behind the stove. He attempted to repair the leak by tightening the pipe with a wrench, but after he finished Mrs. Pickett demonstrated to him that it was not repaired by applying soapy water around the fitting causing bubbles to form. Nevertheless the repairman said he had done all he could and left. Mrs. Pickett also had applied a lighted match directly to the gas leak which caused a bluish red flame to burn all around the fitting, but she did not demonstrate this to the repairman. Again in December, 1962, and in May, 1963, calls were placed with MDU concerning the gas leak, but no repairman ever appeared at the Pickett house in response to their calls.

On June 3, 1963, the day of the explosion, Mrs. Pickett and the two children were staying at her mother's house because Pickett insisted that they leave their residence until they could get the gas leak fixed. Pickett remained at their residence so that he would be there when a repairman arrived. Shortly before 3:00 p.m. Pickett took a shower at the house and being chilled, went to the stove, lit the broiler-oven and a violent explosion occurred blowing the walls of the house outward, collapsing the roof beams, blowing part of the roof onto the roof of the house next door, damaging the interior partitions, and causing shock damage to their landlord's house next door. The explosion, together with the resulting fire, totally de-

stroyed the Pickett residence and inflicted severe personal injuries upon Pickett.

Hereinabove we have set forth the facts most favorable to plaintiff, eliminating entirely from our consideration (1) the credibility of plaintiff as a witness, and (2) all evidence of MDU tending to disprove plaintiff's testimony. However, we feel that in fairness to MDU, we should comment that plaintiff was repeatedly impeached, was inconsistent and self-contradictory in her own testimony, and that her testimony at the very least was inherently improbable if not outright impossible. To demonstrate this conclusion, we refer to unrebutted evidence that a gas leak of the size in question could not produce an explosive mixture when combined with the air in the room; evidence that natural gas feeding into a stove is non-toxic and will not irritate the eyes or cause nausea, but that natural gas that is burned under conditions of improper combustion can produce toxic fumes irritating to the eyes and nauseous; and evidence that the company records reveal no complaints and no service calls. However, as we prefer to ground our decision herein on a different basis, these matters will be entirely eliminated from our analysis and the evidence of plaintiff and her witnesses only will be considered in its most favorable light.

The negligence alleged generally consists of failure to inspect and repair by MDU, which proximately caused the gas explosion resulting in personal injuries to decedent for which damage are sought. The answer of MDU generally consists of a denial of any negligence on its part, denial of proximate cause, and a denial of damages; additionally the answer contains a claim of contributory negligence on the part of decedent barring any recovery by him. At the conclusion of the evidence at the trial, the answer was amended to include the additional defense of assumption of risk by decedent.

The case was tried to a jury before District Judge E. E. Fenton. At the conclusion of all the evidence, MDU moved

for a directed verdict in its favor which was granted, judgment was entered thereon, and this appeal follows from that judgment.

The ultimate issue for review upon this appeal is whether the directed verdict for MDU should have been granted. Subsidiary issues presented for review can be grouped and summarized in this manner:

(1) Should MDU have been permitted to amend its answer at the conclusion of all the evidence to include the additional defense of assumption of risk?

(2) Should plaintiff have been permitted to reopen her case at the conclusion of all the evidence and after MDU moved for a directed verdict?

(3) Did the court commit error in the following rulings on admissibility of evidence: (a) in overruling the plaintiff's objection to a hypothetical question asked of witness John Yapunich; (b) in admitting defendant's exhibit G (a photograph of the premises) in evidence; and (c) in refusing to admit plaintiff's offered exhibits 9 and 10 (autopsy reports) in evidence?

Directing our attention initially to the subsidiary issues, plaintiff argues that MDU should not have been permitted to amend its answer at the conclusion of all the evidence to include the additional defense of assumption of risk by decedent because the basic theory of defense was that decedent committed suicide. Plaintiff further argues that to permit MDU to change its whole defense after all the evidence was in not only results in complete surprise to plaintiff, but that she cannot contest this new defense at that stage because the evidence is all in. This results, according to plaintiff, in extreme prejudice to plaintiff which necessarily constitutes reversible error.

Suffice it to say that this argument finds no support in the record. There is nothing in either the pleadings or evidence of MDU to indicate any defense by MDU based upon suicide

by decedent. Quite the contrary, the pleadings affirmatively disclose the defenses of MDU to be: (1) Substantially a general denial of plaintiff's contentions; and (2) Contributory negligence on the part of decedent. The only evidence remotely tending to support any suicide theory was testimony elicited by the attorney for the landlord on cross-examination of plaintiff's witness Edward D. Martin that after the explosion he observed that the broiler-oven knob and all four top burner knobs on the kitchen stove were on and that he found a loaded 12 gauge shotgun in the debris. This, of course, was no part of MDU's defense and MDU is not chargeable with it.

Additionally, all the evidence on assumption of risk was introduced at the trial without objection and no objection was made to MDU's motion to amend. Under such circumstances, the answer is deemed amended to conform to the proof (Ely v. Montana State Federation of Labor, 117 Mont. 609, 160 P.2d 752) and we can discern no reason why the formal amendment of an answer accordingly constitutes an abuse of discretion by the trial court. It should also be noted that no motion for a new trial was made by plaintiff to the trial court. This court has repeatedly held that claimed error must be raised in the trial court and may not be urged for the first time on appeal. (Bower v. Tebbs, 132 Mont. 146, 314 P.2d 731.)

For the foregoing reasons we find no error by the trial court in permitting MDU to amend its answer to include the additional defense of assumption of risk at the conclusion of all the evidence.

Plaintiff assigns as error the refusal of the trial court to permit her to reopen her case at the conclusion of all the evidence. The record discloses that this motion was made after motion for directed verdict had been made and argued by counsel, and that plaintiff sought to add the testimony of one witness as an expert on the explosive qualities of gas. This witness's testimony was available to plaintiff before

the close of evidence in the case and no showing was made as to the qualifications of the witness or the testimony to be elicited from him. On this basis, the trial court denied plaintiff's motion to reopen her case. Ordinarily neither denial of reopening for testimony of a witness available during reception of evidence at the trial nor denial of re-opening absent a showing of a witness's qualifications and the materiality of his testimony constitutes an abuse of discretion by the trial court. There being no special circumstances shown taking the instant case out of the operation of the general rule, we hold there was no abuse of discretion in refusing the motion of plaintiff to reopen.

Plaintiff next assigns as error the trial court's denial of her objection to a hypothetical question seeking expert opinion evidence from John Yapunich, a witness for MDU, on direct examination. The question, objection, and answer follow:

"Q. And now if you assume for the present purposes that in this explosion the outside walls were blown down and all that was remaining was what you see in this picture here. Also assume that the roof in part was lifted completely over on the next house. Now the folks that were living in the next house were in their living room and between them and the building involved in this explosion were two walls, their living room and then the other outside wall of their house and the force of this explosion was sufficient that it knocked the one lady completely out of her chair to the floor in that living room over there. Now having all of those facts in mind and now assume that we had a pipe that is considerably smaller than this Defendants' Exhibit A, and that natural gas is flowing through it and through this connection and on into a stove. Assume that this were true, and that you had a leak at this joint here which would bubble through just as if you put soap and water on it, just like you were blowing bubbles, assume that when you lit that leak that it would just have a ring of blue around the joint here. Now can you tell us approx-

imately what volume of gas would come through a leak of that size.

"MR. HENNESSEY: We object on the grounds and for the reasons no proper foundation has been laid and the hypothetical question is short several basic elements necessary for this response.

"THE COURT: Overruled. You may cross-examine with respect to any missing elements of the hypothesis.

"A. Well, with a leak of that type you wouldn't use a meter to measure it, you would have to use another special instrument. In order to trap the gas and actually measure the volume of gas coming out at the rate of so many c.c's per minute or so many c.c.'s per hour, and I assume that would be in a range of milliliters per hour, in other words, say 200 milliliters per hour that's less than 1/100th cubic foot per hour which is harmless. It couldn't accumulate in a room and be dangerous."

It is apparent that this question on its face is no model of a proper hypothetical question, and that the response is equally deficient. Be that as it may, it is not error to pose a hypothetical question which does not include all the evidence supporting the questioner's theory of the case—State v. Noble, 142 Mont. 284, 384 P.2d 504; De Sandro v. Missoula Light & Water Co., 52 Mont. 333, 157 P. 641; Kelley v. John R. Daily Co., 56 Mont. 63, 181 P. 326, nor can error be predicated upon a general objection that does not state the specific ground wherein the question is faulty. Prosser v. Montana C. Ry. Co., 17 Mont. 372, 43 P. 81, 30 L.R.A. 814; Jones on Evidence, 5th ed. Vol. 4, § 976, p. 1836. Furthermore, the answer of the witness constituted cumulative testimony only inasmuch as a previous witness had testified that only about 1/100th of a cubic foot of gas per hour would come out of a leak that size, and that such an amount would not create an explosive condition in the room because the required concentration of gas in proportion to air in the room necessary to create an ex-

plosive condition could never be reached due to diffusion. Under such circumstances no prejudice is shown and the error is harmless.

Plaintiff next contends that the trial court committed error in admitting defendant's exhibit G, which is a photograph of the house and contents taken after the explosion. Robert Glasgow, Assistant Fire Marshal of the City of Billings, gave the foundation testimony for admissibility of this exhibit as follows: That he did not know who took the picture, that the picture was taken some time after he took pictures of the scene immediately following the explosion, that the only changed conditions in the scene shown in exhibit G and that which prevailed immediately following the explosion was that in exhibit G the partitions were knocked down and the roof of the house that had exploded was pulled off the house next door so that they would not fall on someone; that otherwise exhibit G was a true and correct representation of the scene as he observed it. The exhibit was offered for the purpose of showing the stove depicted therein, its condition and location. This is clearly sufficient foundation for admissibility of this exhibit in the discretion of the trial court, the only positive requirement being that it correctly represent the scene it purports to depict as viewed by the witness and that any changes be pointed out. See 9 A.L.R.2d 899 and Jones on Evidence, 5th Ed. Vol. 3, Sec. 627, pages 1193-1194; also Teesdale v. Anschutz, 138 Mont. 427, 357 P.2d 4.

Plaintiff next contends that the trial court committed error in refusing to admit plaintiff's offered exhibits 9 and 10 in evidence. These exhibits are the autopsy report, the pre-death diagnosis, medical history and related reports concerning the death of Pickett during the latter part of December, 1965. These were private documents that were not certified or authenticated. No one who had any connection with the preparation of these exhibits was called as a witness, but admission was sought on the basis of testimony of Pickett's

attending physician, who identified the nature of the reports and their general contents. Unsworn medical reports of a third person not called as a witness and available for cross-examination, subject to exceptions not pertinent here, are hearsay and inadmissible in evidence. (Shillingstad v. Nelson, 141 Mont. 412, 378 P.2d 393.)

Passing on to the final and fundamental issue of the case, viz., whether the directed verdict in favor of MDU is proper, we will review the basic arguments of the parties. Plaintiff contends that a directed verdict for MDU is improper here because plaintiff's evidence, viewed in the light most favorable to her, created factual issues for the jury to determine. Plaintiff argues that her evidence proved or tended to prove:

(1) Notice to MDU of a leak in the gas pipe behind the kitchen stove, and of a persistent gassy odor permeating the entire house;

(2) Failure of MDU to inspect and repair within a reasonable time after notice thereby breaching the duty owed by MDU to the Picketts;

(3) A gas explosion proximately caused by this breach of duty; and

(4) Personal injuries and damages to Pickett as a result of the explosion and the accompanying fire.

MDU, on the other hand, argues that plaintiff has introduced no substantial, credible evidence on any of these points contending that the testimony of plaintiff is inherently improbable, at variance with the undisputed physical facts, and self-contradictory in nature. The main thrust of its argument, however, is that:

(1) There is a total absence of proof by plaintiff that the gas leak behind the kitchen stove was the proximate cause of the explosion;

(2) Plaintiff's contributory negligence was established as a matter of law; and

(3) Assumption of risk by plaintiff was established as a matter of law.

At the outset, we must mention the basic rules governing our analysis of the directed verdict in the instant case. The basic Montana statute on directed verdicts is section 93-5205, R.C.M.1947, which provides:

"*Directed verdict—when.* Where, upon the trial of an issue by a jury, the case presents only questions of law, the judge may direct the jury to render a verdict in favor of the party entitled thereto."

This court has heretofore announced three rules in interpreting this statute:

(1) Upon a motion for a directed verdict in favor of the defendant, the evidence introduced by the plaintiff will be considered in the light most favorable to him, and as proving whatever it tends to prove;

(2) A cause should never be withdrawn from the jury unless the conclusion from the facts follows necessarily, as a matter of law, that a recovery cannot be had upon any view which can be drawn reasonably from the facts which the evidence tends to establish; and

(3) In reviewing an order directing a verdict for the defendant, this court will consider only the evidence introduced by the plaintiff, and if that evidence, when viewed in the most favorable light, tends to establish the case made by a plaintiff's pleadings, the order will be reversed. (Johnson v. Chicago, M. & St. P. Ry. Co., 71 Mont. 390, 230 P. 52.)

These three rules have been quoted with approval in inumerable Montana cases since the Johnson case in 1924, the most recent being in 1964 in McIntosh v. Linder-Kind Lumber Co., 144 Mont. 1, 393 P.2d 782, and represent the Montana rules today on directed verdicts. Accordingly in our analysis we will eliminate defendant's evidence entirely and direct our attention solely and exclusively to the testimony and evidence of plaintiff and her witnesses.

 It is hornbook law requiring no citation of authority that the material elements that plaintiff must prove in order to prevail in a damage action of this kind are:

(1) A duty owing from defendant to plaintiff;
(2) A breach of that duty by defendant;
(3) Constituting proximate cause of
(4) Injuries and damages to plaintiff.

 Plaintiff must introduce evidence proving or tending to prove each of these material elements in order to be entitled to have his case submitted to the jury. In the instant case plaintiff's evidence, viewed most favorably to plaintiff, tends to establish the duty, breach, injury, and damages. But there is a total absence of any evidence tending to establish a proximate causal connection between the breach of duty and plaintiff's injuries and damages. Or to state it another way, there is no evidence that any failure to inspect and repair by MDU caused the explosion. There was no evidence of any kind that sufficient gas could escape from this leak to cause an explosion. On the contrary, plaintiff's evidence tended to show that the proximate cause of the explosion was unrelated to any leak in the gas pipe behind the kitchen stove. Plaintiff's own evidence showed the leak in the gas pipe behind the kitchen stove for approximately seven months prior to the explosion; that neither smoking in the kitchen, lighting matches in the kitchen to ignite the cooking burners on the kitchen stove, nor applying lighted matches directly to the leak would cause any explosion; and that the explosion occurred only after Pickett turned on the gas to the broiler-oven and attempted to light it. Under such circumstances it would be pure speculation and conjecture to find that the proximate cause of the explosion was the leak in the pipe behind the kitchen stove that MDU failed to inspect and repair. Consequently we hold that there is a total failure of proof by plaintiff of proximate cause.

Aside from this, plaintiff's own evidence, viewed in its most

favorable light, discloses these additional facts. That shortly after they first moved into their rented house, Mrs. Pickett found out that the broiler-oven was defective and dangerous as disclosed by her following testimony:

"Q. Outside of the smell of gas did you have any other trouble with that gas range in your kitchen: A. Well, the broiler didn't work half of the time, half of it would light and the other half wouldn't, so I always used a match if I had the occasion to use it, and I was ascared of it because one time I tried to light it and, when we first moved in, and the fumes and by the time I got the match down there it blew, and it knocked me down in the middle of the kitchen floor and it singed my eyebrows and my hair and my skin all peeled.

"Q. Is that why you were afraid of this oven? A. And I wouldn't light it after that.

"Q. You never lit it after that? A. No, sir."

Pickett was aware of this, called the gas company about it at least once himself, and, about three or four days prior to the explosion, sent his wife and two children to live with her mother "until he could get that gas stove fixed." Pickett realized this condition was dangerous as disclosed by the following testimony given by Mrs. Picket at the trial:

"Q. Did he tell you anything to the effect that this was dangerous for you to be there or dangerous for you and the children to be there? A. Yes, he didn't think it was right for me and the children to be there, in fact if my mother would have had accommodations he probably would have went up and stayed with her, too, but he couldn't be there and home if the gas man should come.

"Q. In other words, you know for certain that your husband was aware that this was a dangerous condition and ordered you to move out. A. Yes, sir."

Negligence and proximate cause have been held established where a meter reader went into a cellar after having been advised it was full of natural gas from a leak and, in attempting

to discover the source of the leak, struck a match causing an explosion. (Staff v. Montana Petroleum Co., 88 Mont. 145, 291 P. 1042.) In the Staff case, this court held that the striking of a match in the presence of a known danger constituted negligence and that the striking of the match under such circumstances was the proximate cause of the explosion and not the accumulation of gas in the cellar which was nothing more than a condition as distinguished from a cause. Although in the Staff case this court was determining the sufficiency of the evidence to support the verdict rather than the propriety of a directed verdict as in the instant case, we can perceive no reason why the holding of this court as set forth in the preceding sentence is not equally applicable here. For other cases holding that a plaintiff is barred from recovery by his own conduct in the face of a known, visible, or obvious risk, see Stevens v. Waldorf-Hoerner Paper Products Co., 149 Mont. 306, 425 P.2d 832; Cassaday v. City of Billings, 135 Mont. 390, 340 P.2d 509; Hughey v. Fergus County, 98 Mont. 98, 37 P.2d 1035.

Plaintiff's evidence viewed in the light most favorable to her, admits of only one conclusion—that Pickett struck a match in the presence of a known and appreciated danger thereby causing an explosion resulting in injury to him. Accordingly, Pickett was contributorily negligent as a matter of law, and plaintiff is barred from recovery herein.

For much the same reasons Pickett assumed the risk of injury to himself and plaintiff is barred from recovery herein as a matter of law. Although defenses of contributory negligence and assumption of risk are similar in many respects, there is at least one important distinction in the instant case. The defense of contributory negligence arises from breach of duty to use ordinary care. The defense of assumption of risk, on the other hand, will bar recovery irrespective of whether plaintiff used ordinary care or not. (See Zimmer v. California Co. (D.C. Mont. 1959), 174 F.Supp. 757.) As

applied to the circumstances of this case, this defense arises where a person voluntarily exposes himself to a condition he knows and appreciates to be dangerous to himself and is injured thereby. In the instant case, plaintiff's decedent chose to remain in the residence where there was a gas leak and risk of explosion if the gas to the broiler-oven was turned on and lighted, nonetheless turned on the gas to the broiler-oven and attempted to light it, and an explosion resulted that injured him. This is the evidence of plaintiff viewed in its most favorable light. Only one conclusion is possible—that plaintiff assumed the risk of the explosion by his own conduct under the circumstances irrespective of whether he used due care or not.

For the foregoing reasons we hold that the directed verdict by Judge Fenton was correct, and that the judgment entered thereon in favor of MDU is affirmed.

MR. CHIEF JUSTICE JAMES T. HARRISON, and MR. JUSTICES ADAIR, CASTLES and JOHN CONWAY HARRISON, concur.