No. 82-521

IN THE SUPREME COURT OF THE STATE OF MONTANA

1983

NORTHWESTERN UNION TRUST CO., Personal
Representative of the Estate of CHRIST
WORM, SR., Deceased,

Plaintiff and Appellant,

-vs-

BEN WORM AND DORIT WORM,

Defendants and Respondents.

Appeal from: District Court of the Thirteenth Judicial District,
In and for the County of Treasure,
The Honorable William J. Speare, Judge presiding.

Counsel of Record:

For Appellant:

Keefer, Roybal, Hanson, Stacey & Jarussi; Gene R.
Jarussi, Billings, Montana
Bruce E. Lee, co-counsel, Billings, Montana

For Respondents:

William F. Meisburger, Forsyth, Montana
H. D. Buelow, Miles City, Montana

Submitted on Briefs: March 25, 1983

Decided: May 19, 1983

Filed: MAY 19 1983

*Ethel M. Harrison*

Clerk

Mr. Justice John Conway Harrison delivered the Opinion of the Court.

Northwestern Union Trust Company brought this action to set aside a recorded deed which placed title to real property located in Treasure County into defendants' names. Judgment was entered upon a jury verdict in favor of defendants and the Trust Company appeals.

In the late 1940's, Christ Worm purchased two pieces of property in Treasure County known as the "Home Place" and the "South Place." On December 28, 1960, Christ and Helen Worm, and their son and daughter-in-law, Ben and Dorit Worm, executed a $12,000 note payable to the Federal Land Bank of Spokane, after receiving a $12,000 loan. In addition, the Worms executed a Federal Farm Loan Amortization Mortgage on the Home Place and the South Place. The note was to be paid in twenty annual installments of $1,046.22.

On March 31, 1961, Ben and Dorit entered into a contract for deed with Christ and Helen, to purchase the Home Place and the South Place. The purchase price on the contract was $24,000. Ben and Dorit agreed to pay the $12,000 note to the Federal Land Bank and another $12,000 to Christ and Helen directly with 1 percent annual interest. Simultaneously with the execution of the contract, Christ and Helen executed a warranty deed for the Home Place and the South Place to Ben and Dorit. Christ kept possession of the warranty deed to be delivered to Ben and Dorit upon completion of the contract.

Ben testified beginning in 1961 and every year thereafter until 1973 he paid Christ enough money to cover the Federal Land Bank mortgage and paid Christ at least $1,000 annually due on the contract. Ben also paid Christ $5,000 in 1974 and $7,000 in 1975. Ben testified he had therefore paid off the entire contract with the final payment in 1975.

In 1965, Ben and Dorit filed a petition for bankruptcy. The petition did not list Ben's equity in the farm as an asset, nor

did the petition list the note payable to the Federal Land Bank as a claim against the bankruptcy estate. After the bankruptcy, Ben, Dorit, and their children continued to live and work on the farm. From 1967 through 1973 Ben and/or Christ obtained annual financing from the Midland Production Credit Association (PCA). To obtain financing, the debtor must complete and sign a financial statement, loan applications, and security agreements. In those years Ben obtained the financing, he stated on the security agreements that he was operating the farm as a lessee. In those years Christ obtained the financing, he stated on the security agreements that he was operating the farm as the owner.

Northwestern Union introduced into evidence checks showing payments to the Federal Land Bank for the years 1966, 1968, 1969, 1970, 1975, 1976, and 1977. Each check is drawn upon Christ's account and signed by Christ. Ben testified he paid cash to Christ who would then make the necessary payments to the Land Bank.

In April 1975, Ben testified Christ gave him the warranty deed stating Ben had fulfilled his obligation on the contract. Dorit Worm testified she was present when the deed was exchanged. Two persons, Shirly Cunningham and Charles Blythe, testified Ben had possession of the deed in 1975 and showed the deed to them. In February 1977, Dorit Worm filed a petition for dissolution of her marriage to Ben Worm. Paragraph VIII states the parties, "have accumulated no personal or real property."

In 1978, Christ leased the Home Place and the South Place to Harold Zent Farms, Inc. In March 1980, Christ leased the Home Place and the South Place to Robert DeCock and James DeCock. Ben Worm was not a party to the leases.

Dawn Worm, Ben's daughter, testified Ben gave her the deed for safekeeping and that she returned the deed to Ben near the end of 1980 or the beginning of 1981. Helen Worm testified Ben found what she thought was the deed in 1981 while he was helping her move a mattress in Christ's home. Ben recorded the deed at

- 3 -

the Treasure County Clerk and Recorder's Office in November 1981.

Christ died on November 14, 1981. In a Will he executed June 3, 1975, Christ devised one-third of all his real property to Helen Worm; two-thirds of the Home Place to James Jacob Worm; and two-thirds of the South Place to Ben's children, Ben Christ Worm and Christian Willie Worm. The Will states, "I am leaving the 'South Place' to my son BENJAMIN'S CHILDREN at his request so that he may not sell or encumber the same by reason of his admitted weaknesses." Northwestern Union Trust Company was appointed personal representative of Christ's estate.

Northwestern Union brought this action to set aside the deed that Ben recorded placing title to the Home Place and the South Place in his and Dorit's name. After a jury trial in the District Court of the Thirteenth Judicial District, Treasure County, the jury returned a verdict in favor of Ben and Dorit Worm. Northwestern Union moved for a new trial which the District Court denied and this appeal followed.

The issues raised on appeal are as follows:

1. Whether the jury verdict was supported by substantial credible evidence;

2. Whether it was error to exclude the video testimony of attorney, Richard W. Anderson, who prepared the bankruptcy petition for Ben and Dorit in 1965;

3. Whether it was error to instruct the jury that they could find that Christ and Helen Worm made a gift of the real property to Ben and Dorit Worm;

4. Whether it was error to refuse the plaintiff's offered instruction on mutual cancellation of a contract.

We will first deal with issue number four. Plaintiff's offered the following instruction on mutual cancellation of a contract:

> "You are instructed that the parties to a contract may terminate it at any time by mutual consent. The effect is to relieve the parties from going forward under the contract. This termination may be orally done, and the fact of its having been done may be

- 4 -

established by evidence of the acts and declaration of the parties."

Plaintiff's contend the District Court erred in refusing to give this instruction to the jury. We agree. The rule of law stated in the above instruction comes from Eggers v. General Refrigeration Co. (1949), 123 Mont. 205, 219, 210 P.2d 636:

> "The parties to the executory written agreement were privileged to terminate it at any time by mutual consent independently of any express agreement so providing and it is immaterial whether such termination be characterized an abandonment, cancellation, mutual rescission or waiver. The effect is the same -- to relieve the parties from going forward under the written instrument, and this may be accomplished by parol, and the facts of its having been done established by evidence of the acts and declarations of the parties."

This rule originates from Kester v. Nelson (1932), 92 Mont. 69, 10 P.2d 379, and has since been specifically cited in Small v. Coca-Cola Bottling Co. (1958), 134 Mont. 168, 328 P.2d 124, and West River Equipment Co. v. Holzworth Construction Co. (1959), 134 Mont. 582, 335 P.2d 298. In Standard Insurance Co. v. Sturdevant (1977), 173 Mont. 23, 27, 566 P.2d 52, this Court stated: "Termination of a contract by mutual consent is a question of fact for the district court." And in Murphy v. Redland, Berthelson & Sidney Livestock (1978), 178 Mont. 296, 306, 583 P.2d 1049, this Court stated: "A contract may be terminated by the parties, but only by the mutual consent of all the parties."

Plaintiffs pled in their complaint, that the contract had been terminated and in their trial memorandum stated the contract was cancelled by mutual consent of the parties. Helen Worm testified the contract was terminated by the mutual consent of the parties when Ben filed a petition for bankruptcy in 1965. Plaintiffs introduced evidence which showed Ben did not claim ownership of the farm on the bankruptcy petition, loan applications, lease agreements and Dorit's petition for dissolution of marriage. There is no question plaintiff's case rested upon the issue of mutual cancellation of the contract. A party has a

right to have instructions given which are adaptable to his theory of the case. Williams v. Montana National Bank of Bozeman (1975), 167 Mont. 24, 534 P.2d 1247, 1250. Here, refusal to instruct on mutual cancellation of the contract constitutes reversible error.

Defendant's argue since mutual cancellation of the contract was not listed as an issue in the pretrial order, plaintiffs cannot raise this issue on appeal. Defendants rely on Rule 16, M.R.Civ.P., claiming the pretrial order, "when entered controls the subsequent course of the action, unless modified at the trial to prevent manifest injustice." However, Rule 15(b), M.R.Civ.P., states:

> "When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; but failure to so amend does not affect the result of the trial of these issues."

We find here, the issue of mutual consent was raised at the trial and thus was an issue for consideration by the jury. We do not agree with defendant's position that this issue was waived at the trial and not reviewable by this Court.

In summation, we will briefly comment on issues number two and three. We do not find it necessary to determine whether it was error to exclude the video testimony of Richard Anderson as he was intended as a rebuttal witness, not listed on the pretrial order. On retrial, plaintiffs can take the necessary action to present their evidence concerning the bankruptcy petition and call the proper witness or witnesses. Plaintiffs contend it was error for the District Court to instruct the jury that they could find Christ had gifted the property to Ben and Dorit. Whether there was a gift was listed as an issue in the pretrial order. As stated above, a party has the right to have instructions given which are adaptable to his theory of the case.

We find no error in the instruction.

Judgment is reversed and the case is remanded for retrial.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices

- 7 -