No. 84-127

IN THE SUPREME COURT OF THE STATE OF MONTANA

1984

NORTHWESTERN UNION TRUST CO.,
et al.,

Plaintiff and Appellant,

-vs-

BEN WORM and DORIT WORM,

Defendant and Respondent.

APPEAL FROM: District Court of the Thirteenth Judicial District,
In and for the County of Treasure,
The Honorable Charles Luedke, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Keefer, Roybal, Hanson, Stacey & Jarussi; Gene
Jarussi argued, Billings, Montana
Bruce E. Lee, Billings, Montana

For Respondent:

H.D. Buelow argued for Dorit Worm, Miles City,
Montana
William F. Meisburger argued for Ben Worm,
Forsyth, Montana

Submitted:  September 11, 1984

Decided:  October 31, 1984

Filed:  OCT 31 1984

*Ethel M. Harrison*

Clerk

Mr. Justice Daniel J. Shea delivered the Opinion of the Court.

The plaintiff, Northwestern Union Trust Co., acting as personal representative of the estate of Christ Worm, Sr., deceased, appeals from a judgment entered in favor of Ben Worm and Dorit Worm, respectively, the son and the former daughter-in-law of Christ and Helen Worm. The trust company sued Ben and Dorit Worm, contending that the warranty deed in their name to the land in question, was invalid because Ben and Dorit Worm had never performed on the underlying contract for deed concerning the land, and that the parties had in fact cancelled the contract. The sole issue is whether there is substantial credible evidence to support the jury's verdict, which in effect decided that Ben and Dorit Worm had paid for the land and therefore were entitled to the warranty deed. We affirm.

Christ Worm and Helen signed a contract for deed in 1960 to sell their land to their son and daugher-in-law, Ben and Dorit Worm. As part of this contract Christ and Helen Worm signed a warranty deed but were to hold onto the deed until the contract was performed. In April of 1975 Christ and Helen Worm delivered the deed to Ben and Dorit Worm, but the deed was not filed immediately. Two months later, Christ Worm executed a will in which he willed the land in question to persons other than Ben and Dorit Worm. Ben and Dorit Worm did not file the deed until November 4, 1981, 10 days before Christ Worm died. The trust company, as personal representative of Christ Worm's estate, based on the provisions of the will, filed suit against Ben and Dorit Worm seeking to set aside the warranty deed on the ground that Ben

and Dorit Worm had never performed on the underlying contract for deed and therefore that they were not entitled to the property.

This case is before us for the second time. In the first case, (Northwestern Union Trust Co. v. Worm (Mont. 1983), 663 P.2d 325, 40 St.Rep. 758) we granted a new trial to the trust company because the trial court failed to instruct on the trust company's theory of the case that the parties had mutually cancelled the contract for deed. As stated, however, the sole issue in this appeal is whether substantial evidence exists to support the jury verdict that the parties did not cancel the contract and that Ben and Dorit Worm had paid for the land and were therefore entitled to the deed which they filed. The defendants, Ben and Dorit Worm, argue the appeal is frivolous and ask that damages be imposed for a frivolous appeal. We hold the appeal is not frivolous, but that substantial credible evidence supports the jury verdict that the parties had not cancelled the contract for deed.

In reviewing a question of whether substantial credible evidence supports a judgment, we view the evidence in the light most favorable to the prevailing party. The trust company contends that sometime between the years 1960 (when the contract was first entered into) and 1980, the parties cancelled the contract for deed and that the evidence requires a conclusion as a matter of law that the contract had been cancelled. The trust company primarily relies on six situations that occurred over the course of years that lead, according to the views of the trust company, to the inescapable conclusion the parties cancelled the contract for deed. In each of these situations, however, Ben and Dorit

- 3 -

Worm explained to the jury what they did and why they did it, and this evidence was sufficient to make a jury question on whether the underlying contract for deed had been cancelled. The jury resolved those factual questions in favor of Ben and Dorit Worm.

First, the trust company argues Ben and Dorit Worm had, in the contract for deed, assumed a $12,000 mortgage on the land, but that the evidence discloses it was the father, Christ Worm, who actually made the mortgage payments to the Federal Land Bank. The trust company focuses primarily on the payments made by the father after Ben and Dorit Worm had filed for bankruptcy in 1965. These facts, the trust company argues, compel a conclusion Ben and Dorit Worm cancelled the contract for deed that required them to make the mortgage payments, and therefore they no longer had an equitable interest in the land. However, Ben Worm and Dorit Worm testified they believed the duty to pay off the mortgage on the loan was the responsibility of Christ Worm, and therefore they gave the money to Christ Worm, who in turn paid off the mortgage. In addition, and although the evidence is conflicting, Helen Worm, Ben's mother, testified Christ Worm made the payments because Ben didn't have the money. She further testified Christ Worm and Ben Worm then had an agreement that changed the method and manner of payment. She testified Christ Worm and Ben Worm agreed the cattle of Christ and Helen Worm would be fed free of charge on the land, and further, because Christ Worm was unable to work the land himself because of health problems, Ben Worm continued to work the land for 10 years after the bankruptcy was filed. Based on this testimony, the jury was free to decide the

parties changed the method and manner of payment, but that they in effect recognized and honored the contract.

Second, the trust company argues that in several of the years between 1960 and 1981, Ben and Dorit Worm signed numerous financial statements and loan applications on which they claimed no interest in the land involved, either as having an equitable interest in the land or as being liabilities. This evidence, the trust company contends, is inconsistent with a claim of ownership. However, both Ben and Dorit Worm testified they believed they did not own the property until the final payment had been made and therefore they did not make these disclosures on the financial forms. This interpretation is supported by the fact that Christ Worm continued making the payments on the mortgage to the Federal Land Bank even though the contract for deed stated Ben and Dorit Worm assumed the mortgage. The jury had a right to believe the testimony of Ben and Dorit Worm.

Third, the trust company argues the failure of Ben and Dorit to list their equity in the property as an asset in their bankruptcy petition filed in 1965, and their failure to list the obligation to the Federal Land Bank as a claim against the bankruptcy estate, are clear evidence they no longer had an interest in the property. However, after filing the bankruptcy, Ben and Dorit Worm, and their children continued to live and work on the farm. Ben and Dorit Worm testified they did not list the real property as an asset because they believed the exemption under the Homestead Act meant they did not have to list their interest in the property. It was the jury's prerogative to believe their testimony.

Fourth, the trust company argues that when Dorit Worm filed for dissolution of her marriage to Ben Worm in 1977, she failed to list the land as an asset of the marriage, and that this also is clear evidence neither she nor Ben Worm considered they had an interest in or owned the ranch land. Although it is true the petition stated the parties to the marriage had accumulated no real property, Dorit Worm testified she did not list the property in her petition for dissolution because she was of the impression she and Ben Worm would not actually own the property until Ben Worm died. Again, the jury had a right to believe her testimony.

Fifth, the trust company argues that as late as 1978 and 1980 the father, Christ Worm, leased the land to others and the son was not a party to the leases, again indicating Ben and Dorit Worm must have cancelled their contract for the purchase of the land. In 1978 the father leased the land to Harold Zent Farms, Inc., and in 1980 the father leased the land to Robert and James DeCock. However, both lessees testified they knew Ben Worm claimed an interest in the land. And the fact Ben Worm consented to the lease does not compel a conclusion that this consent constituted a waiver or forfeiture of his ownership interest in the land. The jury could simply have decided Ben Worm consented to the leases.

Sixth and finally, the trust company argues that because Christ Worm's will devised the land to other relatives, the conclusion is inescapable Ben and Dorit Worm did not own the land. The will was executed in June of 1975, and took effect on November 14, 1981, upon the death of Christ Worm. However, this attempted devise is not conclusive of ownership being in Christ Worm. The devise would only be possible if Christ Worm owned the property at the time of his death. At

- 6 -

the time of his death Ben and Dorit Worm had possession of the warranty deed for six years, and they filed it 10 days before he died.  The jury was properly instructed on these matters and clearly determined that Christ Worm did not own the property at the time of his death.

The judgment of the District Court is affirmed.

Justice

We Concur:

Chief Justice

Justices