ADOLPH KLAUS AND BLANCHE KLAUS, PLAINTIFFS AND RESPONDENTS, *v.* JAMES HILLBERRY, DEFENDANT AND APPELLANT.

No. 11948.
Submitted April 15, 1971.
Decided May 14, 1971.
Rehearing Denied June 7, 1971.
485 P.2d 54.

Robert L. Johnson, argued, Lewistown, for appellant.

Berger, Anderson & Sinclair, Billings, Richard W. Anderson, argued, Billings, for respondents.

MR. JUSTICE JOHN C. HARRISON delivered the Opinion of the Court.

This is an appeal from a verdict and judgment of the Thirteenth Judicial District, Yellowstone County, Hon. Charles B. Sande, judge presiding with a jury. The verdict and judgment was in favor of plaintiffs, Adolph Klaus and Blanche Klaus, and against defendant, James Hillberry. Defendant appeals from the judgment and a denial of a motion for new trial.

The cause involves a personal injury action resulting from an automobile collision. The facts concerning the accident and the procedural matters will be set forth in considerable detail herein due to the first two issues raised by defendant on appeal.

The accident occurred on July 13, 1968, on Interstate Highway No. 90, west of the Laurel, Montana interchange. Defendant, a resident of Cody, Wyoming, was driving westerly from Billings and somehow missed the Interstate turnoff to Cody, which is located at the Laurel interchange. Noting that he had missed the Cody turnoff, defendant proceeded west observing a sign that indicated the next exit off the Interstate was located at Park City, some seven miles distant.

In this area Interstate Highway No. 90 is a four lane highway with the westbound and the eastbound lanes divided by a median strip about forty feet wide. The highway is a controlled access highway with no lawful turnoffs or crossovers between the eastbound and westbound lanes except at designated points.

While proceeding west toward the next designated turnoff at Park City, defendant noticed "a graveled fill in between the east and westbound lanes." At the same time he made this observation he was traveling in the right hand or outside westbound lane. He testified that upon observing the graveled fill he began to angle from the outside lane to the inside lane toward the median strip, with the intent of crossing the median strip at the graveled fill in order to head back toward the Cody turnoff at the Laurel interchange.

At the very time he began to angle from the outside lane to the inside lane and the median strip, he was being passed on the inside lane by the plaintiffs' vehicle. The testimony in the record is in dispute as to whether defendant used his turn signals or whether his turn was sudden and unannounced. However, there is no question but that defendant's action caused the collision and defendant was cited for an illegal left turn by the highway patrolman who investigated the accident.

Plaintiff Adolph Klaus suffered neck and back injuries for which the jury awarded him $11,811; his wife, Blanche, was awarded $25.

With these facts before us, we proceed to certain procedural matters which arose before and during trial and are now issues on appeal.

This action was instituted with the filing of a complaint on December 2, 1968. On February 11, 1969, defendant filed his answer, generally denying negligence on his part and alleging contributory negligence on the part of plaintiffs. At the same time defendant filed a counterclaim asking judgment against plaintiffs for property damage in the amount of $639.99 and for the additional sum of $250 for the loss of use of his vehicle while it was being repaired. On January 15, 1970, the court ordered

a pretrial conference for January 29, 1970. Plaintiffs filed their pretrial memorandum on January 23, 1970. Pertinent to the issues on this appeal is the following excerpt from that memorandum:

"As the file reflects, defendant has interposed a counterclaim in the sum of $889.99 by reason of property damage. This counterclaim is interposed in the name of defendant personally, and is not being prosecuted by any insurance company. Plaintiffs are now tendering an interrogatory to defendant, requesting information as to whether the amount of this property damage has been paid by defendant's own insurance carrier. If such be the case, it is the plaintiffs' contention that defendant is not the real party in interest in the counterclaim. It must be prosecuted by the insurance company, or not at all."

Plaintiffs then filed and served the interrogatory referred to, inquiring in part:

"Please state whether you have been reimbursed for all or any part of the losses referred to in your counterclaim by any insurance company, and if so, the name of the insurance company making such reimbursement, or paying such damage, and state also the date of such reimbursement or payments, and the amount thereof."

On February 3, 1970, defendant filed his pretrial memorandum, resisting plaintiffs' motion to join the insurance company as a real party in interest because "defendant's damage was only partially paid by his insurer." Defendant did not formally answer the interrogatory concerning the subrogation rights and insurance coverage, but at pretrial conference he admitted that all but the $50 deductible had been paid by his insurer, Wyoming Farm Bureau Insurance Company. At the same pretrial conference defendant's counsel produced an assignment form, wherein the defendant had assigned to his insurance company all claims he might have insofar as they were reimbursed by the company. This assignment became a part of the court file.

The trial court, after considering the memoranda of both parties on the issue of the real party in interest, entered the following order dated February 26, 1970:

"1. That defendant join the Wyoming Farm Bureau Mutual Insurance Company, Inc., as a counterclaimant and real party in interest to the counterclaim on file herein, according to the interest of said Wyoming Farm Bureau Mutual Insurance Company, as the same is disclosed by Exhibit 'A,' attached to plaintiffs' memorandum on real party in interest issues; or,

"2. Dismiss the counterclaim in its entirety.

"Unless defendant make such joinder as above ordered by March 4, 1970, said counterclaim will at that time be dismissed."

On March 4, 1970, defendant filed a pleading entitled "Notice of Joinder of Cross-Complainant" in which he stated:

"Please take notice that Wyoming Farm Bureau Mutual Insurance Company, Inc., pursuant to order of the court dated February 26, 1970, made and entered herein, does by these presents elect to be joined in this cause as a cross-complainant against Adolph Klaus * * *."

Trial was set for March 30, 1970 and just prior to that date defendant made a motion in limine designed to preclude the mention of the insurance carrier at the trial. Due to the fact that Judge Sande was unavailable for trial at the date set, the motion was not heard. However, on the morning of the rescheduled day set for trial, May 18, 1970, defendant renewed the motion and moved to dismiss the counterclaim. The trial judge granted both motions and the parties went directly into the courtroom where Judge Sande allegedly announced to the jury panel:

"This is Cause No. 52858, Adolph Klaus and Blanche Klaus, plaintiffs v. James Hillberry and Wyoming Farm Bureau Mutual Insurance Company, Inc., defendants."

No court reporter was present at the time of this alleged statement.

Appellant presents four issues on appeal:

1. Was the mention of the name of the insurance company as a party defendant error?

2. Did the court err in requiring the joinder of the insurance company as a party to the action?

3. Did the court err in disallowing evidence of prior inconsistent statements to impeach Adolph Klaus' testimony concerning the location of the collision?

4. Was it error to allow Dr. Swanson, attending physician for Mr. Klaus, to testify from reports given him by a Dr. Meyer, a neurologist?

Because the first two issues for review relate to the interjection of the insurance question, we will combine the issues for discussion.

Appellant relies on two recent decisions of this Court in his contention that the interjection of the word "insurance" calls for a reversal. Those cases are: D'Hoodge v. McCann, 151 Mont. 353, 443 P.2d 747; State ex rel. Hereim v. District Court, 154 Mont. 112, 460 P.2d 755. While these cases hold that the fact insurance is involved in the case such fact may not be conveyed to the jury in a tort action. These cases are not factually applicable in the instant case.

Here, there is a question as to whether the words "Insurance Company" were mentioned by Judge Sande when he announced to the jury panel the name of the case to be tried. While no court reporter was present when Judge Sande made the alleged remark, we do have a record made later which indicates what was probably said:

"MR. JOHNSON: Very reluctantly, Your Honor, I think I must ask the Court for a mistrial at this time because of the mention of Wyoming Farm Bureau being a party to this suit in light of the pre-trial rulings and motions made and given. Wyoming Farm Bureau was dismissed as a party defendant or cross-complainant, and I believe that harm was done to the defendant here that is reversible at this time.

"THE COURT: Your comment, Mr. Anderson?

"MR. ANDERSON: For the record I believe that it should show the nature and contention of the comment by the Court and when it was made. It was made immediately after the Jury was called and before voir dire examination began, and the Court simply stated in a soft tone of voice, that this was the time set for trial in the cause between Adolph Klaus and Blanche Klaus as plaintiffs and James Hillberry and the Wyoming Farm Bureau as defendants. At that point, Counsel for the defendant approached the Bench and reminded the Court that the Wyoming Farm Bureau had been dropped from the case because of the dismissal of the counter-claim, and made no request at that time for a mistrial, made no objection, no further objection to the comment by the Court, and requested no instruction to the Jury that the Wyoming Farm Bureau was not a party to this action, and therefore plaintiffs believed that the defendant has waived objection at this time, and the voir dire examination by both parties having now been completed, and are now in the process of exercising peremptory challenges.

"THE COURT: Motion denied."

(Whereupon the jury was selected).

If this is a true and correct statement of Judge Sande's remarks, the words "Insurance Company" were never mentioned.

■ As noted above, we do not find appellant's case authority controlling. In *D'Hoodge* we noted repeated efforts on the part of trial counsel to inject insurance into the case. We have no such situation here. In addition, here, the court gave appellant's proposed instruction No. 12, which reads:

"You are instructed that the following parties are the sole participants in the proceeding, and you will confine your deliberations to determining the rights of these parties as individuals * * *"

We find our recent holding in Rasmussen v. Sibert, 153 Mont. 286, 456 P.2d 835, to be controlling. In *Rasmussen* the plaintiff mentioned the forbidden word "insurance' 'in response to a

question of his own counsel, but like appellant here, defendant failed to object until some 26 questions and answers later. There we held defendant waived error, if any there was, and said:

"We also hold that by his failure to object, ask for an admonition by the court to the jury to disregard plaintiff's testimony, move for a mistrial, or request a corrective jury instruction, defendant waived any objection he otherwise might have had to plaintiff's testimony and is estopped from raising this for the first time on motion for new trial."

Here, if the words "Insurance Company" were used, and there is considerable question that they were, the trial court protected the record in giving appellant's proposed instruction No. 12.

We note in denying appellant's first issue that:

1. The appellant owes the trial court the duty to prevent inadvertent mishaps as occurred here. It was not until the last minutes before trial that the insurance company, which had elected to become a party to the cause, was dismissed from the action, and then only by a verbal motion.

2. The testimony shows clear liability.

3. Appellant obtained a jury instruction keeping out the insurance issue.

4. Appellant waived any objection to the alleged remark by examining and passing the jury panel for cause before noting any objection.

In regard to issue No. 2, the joinder of the insurance company during the pretrial stage, the counterclaim was dismissed on appellant's motion and the issue is moot.

In issue No. 3 appellant contends the court erred in disallowing evidence of a prior inconsistent statement concerning the location of the accident to impeach the testimony of plaintiff Adolph Klaus. We find no merit in this contention.

In a deposition made by respondent Klaus he referred to the earth fill which appellant attempted to use as a crossover as "this crossover that the Highway Department uses." At the trial Klaus affirmed this testimony by stating that the highway

patrolman who investigated the accident described the cross-over as a dirt fill the use of which by other than patrolmen, was illegal. Appellant argues that the accident happened at a maintenance crossover as previously described by a highway engineer, rather than the dirt fill as described by the patrolman. The court allowed appellant to bring out the inconsistency but refused to allow the same questions to be repeated over and over. This was repetitious, and the court's refusal to allow its continuance was not prejudicial.

In issue No. 4 appellant argues that the court was in error in allowing respondent's witness Dr. Swanson, a general practitioner, to testify without foundation from a writing purportedly made by a Dr. Meyer, a neurologist. Appellant contends that testimony from unsworn statements, where no right to cross-examine has been afforded appellant, is hearsay and inadmissable. He relies upon two recent opinions of this Court to support his contention: Shillingstad v. Nelson, 141 Mont. 412, 378 P.2d 393; Pickett v. Kyger, 151 Mont. 87, 439 P.2d 57.

We note here that Dr. Swanson was respondent's doctor who treated him in the hospital immediately after the accident and who thereafter was the attending physician during the recovery. During this period of treatment respondent Klaus complained of headaches, neck, and back problems which Dr. Swanson, as a general practitioner, felt needed the opinion of a specialist. He sent respondent to a Doctor Walton, an orthopedic specialist, who in turn referred respondent to Doctors Roney and Meyer, neurologists. After examination and diagnosis, Doctors Roney and Meyer sent their report in the form of letters to Dr. Swanson to assist him in treatment of respondent. Dr. Swanson testified that these reports were used by him in his treatment and in making his prognosis.

In *Shillingstad* this Court held that unsworn medical reports are hearsay and inadmissable where no right to cross-examine is had and we noted further that factually that case did not come within any of the exceptions to that rule. However, here the factual situation is not that of *Shillingstad*. There, a medical re-

port was introduced by the plaintiff which had been written to the defense counsel by a doctor who had examined the plaintiff for the purpose of litigation. We held that report to be hearsay and not within any exceptions to the hearsay rule.

■ *Pickett* followed *Shillingstad*. In *Pickett*, plaintiff attempted to introduce actual reports from persons not present at the trial, all being private documents and not part of a case file of any attending physician. In the instant case we have the exact opposite situation, the reports are part of the case file of the attending physician, Dr. Swanson, and such reports are "exceptions to the hearsay rule." These reports of the other doctors were used by Dr. Swanson in making his diagnosis but the final conclusions made were those of Dr. Swanson, the attending physician. His testimony was no more hearsay by reason of being based upon consultation with specialists, than if it were based upon either a lecture or information from a medical text. Medical testimony must of necessity in many instances be based on information acquired from outside sources, examinations by other doctors, nurses notes and observation, X-rays, and other tools of the profession used in the making of a diagnosis. See section 93-801-2, R.C.M.1947; 32 C.J.S. Evidence § 682; 30 Am.Jur.2d Evidence §§ 927, 930-933, 937; Jones on Evidence 5th ed., V. 2 § 291, V. 3 §§ 548, 843; 44 A.L.R.2d 553; 17 A.L.R.2d 235; 66 A.L.R.2d 536.

Judgment is affirmed.

MR. CHIEF JUSTICE JAMES T. HARRISON, and MR. JUSTICES CASTLES, HASWELL, and DALY, concur.