No. 84-487

IN THE SUPREME COURT OF THE STATE OF MONTANA

1985

IN THE MATTER OF THE MENTAL

HEALTH OF G. S.

APPEAL FROM: District Court of the Eighth Judicial District,
In and for the County of Cascade,
The Honorable Joel G. Roth, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

McAllister & Smith, Great Falls, Montana

For Respondent:

J. Fred Bourdeau, County Attorney, Great Falls,
Montana
Barbara Claassen, Asst. Attorney General, Helena,
Montana

Submitted on Briefs: Feb. 14, 1985

Decided: April 8, 1985

Filed: APR 8 - 1985

*Ethel M. Harrison*

Clerk

Mr. Chief Justice J. A. Turnage delivered the Opinion of the Court.

G. S. appeals an order of the Cascade County District Court finding him seriously mentally ill. G. S. was committed to three months hospitalization in the Warm Springs State Hospital.

The Cascade County Attorney filed a petition for involuntary commitment on July 30, 1984. The petition was filed at the request of D. S., the father of appellant. The initial hearing on probable cause to commit was held July 31, 1984.

At this hearing testimony was received that G. S. had suffered a relapse of previous mental illness in the several weeks preceding the filing of the petition. The appellant had been observed by his father, with whom he was living, to be digging numerous holes in the backyard. Apparently, the appellant was attempting to find something of value that he had buried previously. Additionally, the appellant had become more violent. At one point G. S. threatened to take his father's head off with an iron bar that he raised menacingly. On July 25, 1984, the appellant engaged his father in a struggle in a bedroom of their home. There was no apparent provocation for the fight, and the father received some minor cuts in defending himself and subduing his son.

At the initial hearing, in accordance with § 53-21-122, MCA, the court appointed an individual to be the friend of G. S., appointed counsel and named Dr. James Day to be the professional person to examine G. S. The commitment hearing was set for August 7, 1984.

The problem in this commitment proceeding and the focus of the present appeal developed when the deputy county

2

attorney informed the court at the initial hearing that Dr. Day would be out of town during the August 7 hearing. The attorney proposed that the court appoint two psychiatrists as the statutorily required "professional person" such that Dr. Day could conduct the examination and the second psychiatrist, Dr. Hughes, could be present at the August 7 commitment hearing to testify on G. S.'s condition. The court assented to this proposal and both doctors were appointed as the professional person.

Appellant's counsel did not object to the tandem appointment but requested that G. S. be allowed to retain his own psychiatrist to testify on his mental condition. The court granted this request, but appellant's efforts were later frustrated when the third psychiatrist refused to appear on behalf of appellant.

Dr. Day initially committed appellant to Deaconess Hospital on July 30, 1984. G. S. was placed in the security unit and was observed on a daily basis by Dr. Day. Observational notes were recorded and later submitted to the court. Dr. Hughes assumed Dr. Day's caseload, including G. S., on August 3, 1984.

Before Dr. Hughes had an opportunity to perform a formal psychiatric evaluation, G. S. escaped from the hospital on August 5. The doctor had met briefly with appellant the day before, but the patient was unwilling to submit to an examination. Both appointed psychiatrists in this case were viewed by G. S. as "agents of the prosecution."

Dr. Day and Dr. Hughes separately filed psychiatric reports containing a diagnosis of appellant's mental condition with the District Court. These reports were based on their personal observations of G. S. during his

hospitalization, their brief conversations, and the patient's past medical history. G. S. had previously been under the care of both doctors.

The commitment hearing was held as scheduled August 7. The appellant was present, as he had been returned to custody following his escape. D. S. testified on the violent and dangerous behavior of his son. Dr. Hughes, over the objection of appellant's counsel, testified that G. S. suffered from an acute exacerbation of a bipolar disorder, manic type. This diagnosis is a form of schizo-affective schizophrenia. In the words of Dr. Hughes, the diagnosis was based "upon my knowledge of Dr. Day's abilities, and my knowledge of [G. S.'s] past history, and in reviewing Dr. Day's report, and from visiting with [G. S.] on the morning of August the 4th . . ."

The lower court found that G. S. was suffering from a mental disorder and the mental disorder presented an imminent threat of injury to others, particularly his father. In an order dated August 7, the appellant was committed to Warm Springs State Hospital.

The arguments appellant presents are best framed as two issues:

1. Whether the court erred in an involuntary commitment proceeding by allowing a professional person to offer an opinion on the subject's mental condition, when the doctor did not formally examine the patient but relied on another doctor's report who was not present at the hearing.

2. Whether there was sufficient evidence to support the court's finding that the appellant was seriously mentally ill.

4

Appellant's contentions focus on the language and proper interpretation of one code section, § 53-21-126, MCA. This section sets forth the procedures to be followed at a trial on a petition for commitment. As the statute explains, its purpose is limited to the determination of whether the respondent (person requested to be committed) is seriously mentally ill. The underlying definition of seriously mentally ill is whether the person is suffering from a mental disorder which has resulted in self-inflicted injury or injury to others or the imminent threat thereof. Section 53-21-102(14), MCA.

The code provision at issue, § 53-21-126(3), MCA, provides that the professional person appointed by the court shall be present at the trial and subject to cross-examination. Here, we have an unusual factual situation where two doctors were appointed, their examination responsibilities were shared, the patient escaped before a formal examination was completed and one doctor testified at trial relying on the other's report.

We find no impropriety in the arrangement whereby two doctors were appointed by the court such that one could testify on the patient's mental condition in the other's absence. This situation is not addressed by the statute and has not been judicially recognized in Montana. Of critical importance is that the doctor who did ultimately diagnose G. S.'s mental condition was available for cross-examination at the commitment hearing. Since appellant's attorney was given the opportunity to question Dr. Hughes and test the validity of his diagnosis we find no derogation of the statute's intent.

Appellant reads § 53-21-126(3), MCA, to mean any professional person appointed by the court shall be present at the trial and subject to cross-examination. Were this the language of the statute we would resolve the issue differently. Since the statute reads the professional person appointed, we accept the arrangement presented as permissible and will not reverse the court's order.

The Court of Appeals of New Mexico was faced with a similar issue in the Matter of Dean (N.M.App. 1980), 607 P.2d 132. In that case, the court affirmed the District Court's order of involuntary commitment of the defendant. The defendant alleged error because the court had considered opinions of two absent doctors. In order to commit an adult under the New Mexico statutes, there arguably had to be testimony by the mental health professional whose opinion was reflected in the screening report as to the likelihood of defendant causing serious harm to herself or others. The Court of Appeals held that the legislature had not explicitly stated that the person or persons making the report must testify. What was found to be critical was that sound professional justification exist for the commitment proceedings.

Our statutes do require the professional person be present. However, the critical requirement of professional justification was satisfied here, where one of two appointed professionals was present. We hold that where two or more professionals are appointed pursuant to § 53-21-126(3), the presence of one at the commitment trial satisfies the statute.

Appellant argues that it was error to allow Dr. Hughes to testify when the doctor relied on another doctor's opinion

6

and Dr. Hughes was not the attending physician. We do not accept this argument for several reasons.

Rule 703, Mont.R.Evid., clearly provides that one doctor can state his expert opinion based on another doctor's report. The rule states:

> "The facts or data in a particular case upon which an expert bases an opinion or inference may be those perceived by or made known to him at or before the hearing. If of a type reasonably relied upon by experts in a particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence."

This rule was adopted verbatim from the modern federal rules. In the advisory committee's comment to the federal rule we find:

> "Facts or data upon which expert opinions are based may, under the rule, be derived from three possible sources. The first is the firsthand observation of the witness, with opinions based thereon traditionally allowed. A treating physician affords an example. Rheingold, The Basis of Medical Testimony, 15 Vand.L.Rev. 473, 489 (1962). Whether he must first relate his observations is treated in Rule 705. The second source, presentation at the trial, also reflects existing practice. The technique may be the familiar hypothetical question or having the expert attend the trial and hear the testimony establishing the facts. Problems of determining what testimony the expert relied upon, when the latter technique is employed and the testimony is in conflict, may be resolved by resort to Rule 705. The third source contemplated by the rule consists of presentation of data to the expert outside of court and other than by his own perception. In this respect the rule is designed to broaden the basis for expert opinions beyond that current in many jurisdictions and to bring the judicial practice into line with the practice of the experts themselves when not in court. Thus a physician in his own practice bases his diagnosis on information from numerous sources and of considerable variety, including statements by

> patients and relatives, reports and
> opinions from nurses, technicians and
> other doctors, hospital records, and
> X rays. Most of them are admissible in
> evidence, but only with the expenditure
> of substantial time in producing and
> examining various authenticating wit-
> nesses. The physician makes life-and-
> death decisions in reliance upon them.
> His validation, expertly performed and
> subject to cross-examination, ought to
> suffice for judicial purposes." (Empha-
> sis supplied.) Advisory Committee Note,
> F.R.Evid. 703.

Thus, reports and opinions from other doctors are facts or data for purposes of Rule 703, Mont.R.Evid. Other decisions of this Court support this holding. Matter of C.M. (1981), 195 Mont. 171, 635 P.2d 273; Ankeny v. Grunstead (1976), 170 Mont. 128, 551 P.2d 1027; Klaus v. Hillberry (1971), 157 Mont. 277, 485 P.2d 54.

Appellant cites a provision of the criminal code, § 46-14-213(1), MCA, which provides that no one who has not examined the defendant is competent to testify on his mental condition. Appellant argues that the provision should be analogized to the case at bar and invoked to prevent the nonattending physician, Dr. Hughes, from testifying.

A hearing on involuntary commitment is governed by the Montana Rules of Civil Procedure, § 53-21-126(3), MCA; we find the cited criminal code provision inapplicable and appellant's arguments on this issue without merit.

The second issue raised by appellant is whether substantial evidence supports his order of commitment. Appellant disputes the finding made by the court, pursuant to § 53-21-126(4)(a), MCA, that he was suffering from a mental disorder.

Our review of the record has identified several sources of evidence from which the District Court could have

concluded that G. S. suffered a mental disorder. First, there is the oral testimony of Dr. Hughes. Secondly, there are the various medical reports that were submitted by the psychiatrists and the hospital records.

Appellant expressly asks this Court to review the weight of Dr. Hughes's testimony. This is not the role of an appellate court. The trier of fact makes findings and this Court will not disturb them unless shown to be clearly erroneous. Rule 52(b), M.R.Civ.P.

The order of commitment is affirmed.

Chief Justice

We concur:

Justices